Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
(855) 384-3262

*Attorney for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH BRENNAN, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CREDENCE RESOURCE MANAGEMENT, LLC and DIRECTV, LLC,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR INJUNCTION AND DAMAGES**<br><br>**Class Action**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Joseph Brennan ("Mr. Brennan"), by his undersigned counsel, for his class action complaint against Defendants Credence Resource Management, LLC ("Credence Resource") and DirecTV, LLC ("DirecTV") and their present, former and future direct and indirect parent companies, subsidiaries, affiliates, agents and related entities, alleges as follows:

## I. INTRODUCTION

1. <u>Robocalls Outlawed</u>: As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (available at https://www.consumerreports.org/cro/magazine/2015/07/rage-against-robocalls/index.htm (last visited Apr. 8, 2024). "Robocalls" are the number one consumer complaint in America today and Defendant's conduct in this case is a good reason why.

3. The TCPA was enacted to prevent companies like Defendants from invading American citizens' privacy and to prevent illegal robocalls.

4. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices – for example, computerized calls to private homes. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012) ("The Act bans certain practices invasive of privacy[.]").

5. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). "Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014).

6. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found,

automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. These types of damages are the same shared by the Plaintiff and the class members.

7. Accordingly, the TCPA regulates, *inter alia*, the use of prerecorded messages and use of automated telephone equipment, or "autodialers" a/k/a "robodialers." Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

8. On January 4, 2008, the FCC released a Declaratory Ruling confirming that automated or prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. *See* In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 1 (Jan. 4, 2008) ("2008 FCC Ruling"). The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *Id.*, ¶¶ 9-10.

9. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *See* In re Rules Implementing the TCPA, 23 FCC Rcd 559, 17, ¶ 10 (F.C.C. Dec. 28, 2007) ("2008 FCC Order").

10. Upon information and good faith belief, Defendant Credence collects debts for DirecTV and routinely violates 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with non-emergency calls it places to telephone numbers assigned to a cellular telephone service, without prior express consent.

11. More specifically, upon information and good faith belief, Defendant routinely uses an artificial or prerecorded voice in connection with non-emergency calls it places to wrong or reassigned cellular telephone numbers.

12. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

13. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

## II. PARTIES

14. Plaintiff Brennan is an individual and a member of the class defined herein.

15. DirecTV, LLC is a California company located in this District.

16. Credence Resource Management, LLC is a limited liability company that contracted with DirecTV in this District.

## III. JURISDICTION AND VENUE

17. <u>Jurisdiction</u>: This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. 47 U.S.C. § 227; *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

18. <u>Personal Jurisdiction</u>: This Court has personal jurisdiction over the Defendants because they are either a California corporation or worked with said Corporation to orchestrate the conduct at issue in California, including having contracts that likely contain California choice of law and forum provisions.

19. <u>Venue</u>: Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims—namely, the sending of the illegal telemarketing from Consumers and orchestrated by and directed by Consumers—occurred in this District.

## IV.     FACTS

20.     Plaintiff is, and has been since approximately January 19, 2024, has been the subscriber to and customary user of his cellular telephone number—(337) XXX-6006.

21.     For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd 12391, 12397 ¶ 13 (1995).

22.     As previously mentioned, the FCC has held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *See* FCC Order, 23 FCC Rcd 559, 17, ¶ 10.

23.     The 2008 FCC Order establishes that DirecTV is *directly liable* for the calls that Credence Resource made on its behalf: "[A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector *on behalf of* that creditor are treated as if the creditor itself placed the call." *Id.*, ¶ 10 (emphasis added).

24. The debt collections calls placed to Plaintiff and the class described herein were placed on behalf of DirecTV.

25. Thus, DirecTV is directly liable for each of Credence Resources violations of § 227(b)(1)(A)(iii) alleged herein because the calls were placed on DirectTV's behalf. *Id.*

26. To place the debt collection calls described herein, Credence Resource receives the telephone numbers for past due DirecTV accounts which instructs Credence Resource to call them.

27. DirecTV hired Credence Resource for the purpose of making debt collection calls for DirecTV.

28. DirecTV could have restricted Credence Resource from using pre-recorded messages to make the calls.

29. But it did not.

30. DirecTV knew that Credence Resource was calling using pre-recorded messages.

31. Indeed, Plaintiff, through counsel, sent DirecTV a letter about their collection calling practices.

32. Credence Resource still called Plaintiff after receipt of the letter using a pre-recorded message.

33. Credence Resource began placing calls to telephone number (337) XXX-6006 for DirecTV on February 6, 2024, or earlier.

34. Credence Resource placed calls for DirecTV to telephone number (337) XXX-6006 intending to reach someone other than Plaintiff.

35. Credence Resource placed calls for DirecTV that included at least five pre-recorded calls to telephone number (337) XXX-6006, including on February 6, 14, 28 and March 1, 2024.

36. Credence Resource used an artificial or prerecorded voice in connection with the above-described calls it placed to telephone number (337) XXX-6006.

37. The pre-recorded message played during each of the above-described calls stated the call was being made on behalf of DirecTV in order to collect a debt. During the first of these calls, Plaintiff waited on the line after which a live agent came on the phone and asked, "Is this Whitney," to which he replied no. This caller then stated the call was to collect a debt for $500.81 owed to DirecTV. Plaintiff reiterated that he was not Whitney, that he did not owe DirecTV any money and asked not to be called again.

38. Defendant's voice messages were generic and identical.

39. Given the generic nature of the messages, the content of the messages, and that messages were identical in tone, voice, content, and style, the messages

Defendant delivered to telephone number (337) XXX-6006 were prerecorded in nature.

40. The pattern and tone of the speech made clear to Plaintiff that the messages Defendant played were prerecorded in nature.

41. All of the calls came from Caller ID (833) 955-4516.

42. Other individuals have complained about receiving robocalls from that number. *See* https://www.nomorobo.com/lookup/833-955-4516 (Last Visited April 5, 2024).

43. Upon information and good faith belief, Defendant's calls and prerecorded voice messages to (337) XXX-6006 were intended for a person named "Whitley".

44. Indeed, text messages Credence Resource sent for DirecTV to Plaintiff identified the individual they were attempting to collect a debt from:



45. Plaintiff does not know "Whitley".

46. Plaintiff does not have, nor did he have, an account with Defendants.

47. Plaintiff does not, nor did, owe any money to Defendants.

48. Plaintiff did not provide telephone number (337) XXX-6006 to Defendants.

49. Plaintiff did not provide Defendants with consent to place calls, in connection with which it used an artificial or prerecorded voice, to telephone number (337) XXX-6006.

50. Plaintiff did not provide "Whitley" with authority to consent on his behalf to receive calls from Defendant.

51. Defendants placed the subject calls to telephone number (337) XXX-6006 voluntarily.

52. Defendants placed the subject calls to telephone number (337) XXX-6006 under its own free will.

53. Defendants had knowledge that it was using an artificial or prerecorded voice in connection with the subject calls it placed to telephone number (337) XXX-6006.

54. Plaintiff listened to the voice messages Defendants delivered to his cellular telephone.

55. Plaintiff suffered actual harm as a result Defendants' subject calls, in connection with which it used an artificial or prerecorded voice, in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

56. Upon information and good faith belief, Defendants, as a matter of pattern and practice, uses an artificial or prerecorded voice in connection with calls it places to telephone numbers assigned to a cellular telephone service, absent prior express consent.

**Class Action Allegations**

57. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following class:

> All persons throughout the United States (1) to whom either defendant placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) not assigned to a person with an account in collections with DirecTV, (4) where an artificial or prerecorded voice was played, (5) from four years prior to the filing of this complaint through the date of class certification.

58. Upon information and belief, the members of the class are so numerous that joinder of all of them is impracticable.

59. The exact number of the members of the class is unknown to Plaintiff at this time, and can be determined only through appropriate discovery.

60. The members of the class are ascertainable because they are defined by reference to objective criteria.

61. In addition, the members of the class are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be

identified in business records maintained by Defendant and by third parties.

62. Plaintiff's claims are typical of the claims of the members of the class.

63. As it did for all members of the class, Defendant placed calls to Plaintiff's cellular telephone number in connection with which it used an artificial or prerecorded voice.

64. In addition, like all members of the class, Plaintiff did not have an account in collections with Defendant.

65. Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice, and procedure on the part of Defendant.

66. Plaintiff's claims are based on the same theories as the claims of the members of the class.

67. Plaintiff suffered the same injuries as the members of the class.

68. Plaintiff will fairly and adequately protect the interests of the members of the class.

69. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

70. Plaintiff will vigorously pursue the claims of the members of the class.

71. Plaintiff has retained counsel experienced and competent in class action litigation.

72. Plaintiff's counsel will vigorously pursue this matter.

73. Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

74. The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class.

75. Issues of law and fact common to all members of the class include:

    a. Defendant's violations of the TCPA;

    b. Defendant's conduct, pattern, and practice as it pertains to dialing wrong or reassigned cellular telephone numbers;

    c. Defendant's conduct, pattern, and practice as it pertains to placing calls with an artificial or prerecorded voice to wrong or reassigned cellular telephone numbers;

    d. Defendant's use of an artificial or prerecorded voice; and

    e. The availability of statutory penalties.

76. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

77. If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

78. The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

79. The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

80. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

81. The damages suffered by individual members of the class may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

82. The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

83. There will be little difficulty in the management of this action as a class action.

84. Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

## Count I

### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

85. Plaintiff repeats and re-alleges each and every factual allegation contained herein.

86. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number and the cellular telephone numbers of the members of the class, without consent, or by the fact that someone did so on their behalf.

87. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

## Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment in favor of Plaintiff and the Class against Defendants, as follows:

    a) Determining that this action is a proper class action;

    b) Designating Plaintiff as a representative of the class under Federal Rule of Civil Procedure 23;

c) Designating Plaintiff's counsel as counsel for the class under Federal Rule of Civil Procedure 23;

d) Adjudging and declaring that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(b)(3)(B);

f) Awarding Plaintiff and the members of the class treble damages under 47 U.S.C. § 227(b)(3);

g) Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

h) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

i) Awarding such other and further relief as the Court may deem just and proper.

## V. DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 12th day of April, 2024.

/s/ Dana J. Oliver

Dana J. Oliver (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, California 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Keith J. Keogh, Esq. (pro hac vice)
keith@keoghlaw.com
wsweetnam@keoghlaw.com
William M. Sweetnam, Esq. (pro hac vice)
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092

Anthony Paronich
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
(617) 485-0018

*Attorneys for Plaintiff and the Proposed Class*